The next case is Metro-North v. United Illuminating. Good morning. May it please the court, my name is Beck Feynman. I have the privilege of representing Metro-North and the MTA in this appeal. I thought that we were going to hear in the last case a little bit more about the specific claims at issue in the case, so just by way of setting a brief background, I want to bring us back to the accident itself that precipitated not only Mr. Colon's claim against Metro-North and the MTA, but Metro-North and the MTA's claim against United Illuminating. So Mr. Colon trespassed onto railroad property in an area where the electrified railroad runs by way of power that is suspended 45 feet plus in the air. Those towers, which are not electrified from base to bonnet, those different types of wires at various levels. The high voltage wires, first you have Metro-North's wires, 45 feet or so up in the air, and then above that you have United Illuminating's much higher voltage electricity electrical wires, 50 some feet up in the air. Mr. Colon claimed at all times that his accident happened because he climbed to a certain height and was startled by electricity from some invisible electrical field that we heard a little bit about before. It was because he was startled that he then was caused to fall onto the lower Metro-North wires, and that's where he made contact with the electrical wires that caused the severity of the injuries that he has today. But the claim was always that he encountered some elusive, invisible electricity, and he initially pled in his complaint that that electricity came either from Metro-North's wires or from UI's, United Illuminating's wires. The crux of that claim falls squarely within the indemnification provision that Metro-North and the MTA relied upon when they went back to UI and said, hey, if somebody has to defend this claim, it should be at your expense under the very broad, extraordinarily broad indemnification provision that is in the contract between the Connecticut Department of Transportation, which has as its designee Metro-North, so Metro-North is the beneficiary of that contract for purposes of this case, between CDOT and United Illuminating. United Illuminating in entering into that contract voluntarily assumed an extraordinary amount of risk, and one of the risks that they assumed was if somebody someday makes a claim that they were injured because of the mere presence of United Illuminating's wires up on that catenary, that if Metro-North, in that instance, or if Connecticut Department of Transportation was sued as a result of that injury and had to expend money to defend that claim, no matter how meritless it might be, United Illuminating said in that contract, we will pay for the cost of defense. I understand Judge Meyer says the contract doesn't spell out cost of defense. It would be considerably simpler if the duty to defend were referenced in that article as it is in Article 3, and it's not. It would have, but it doesn't preclude reading that Article 9 to also include cost of defense, and that's because the language of Article 9 is even broader than what you have in Article 3, much broader, and much broader than what you see in most indemnity contracts that the I'm surprised that there's a provision that says that United Illuminating has to get insurance that covers things, that includes the cost of defense, that insurance has to cover that even for groundless claims. They have to get that insurance, and it also says that the state and the state's designee shall be named as additional insured parties, so I would have thought that that would allow Metro-North to sue under this policy, under the insurance that UI was required to obtain. Why didn't you do that? Well, Metro-North's position was when we brought the third-party complaint against United Illuminating, we are essentially putting United Illuminating and its insurance carrier on notice that there is a claim. It's not Metro-North's responsibility to go directly to the carrier. Well, if you're an insured, then you have the ability to do that, right? We might have, Your Honor, but that doesn't preclude us also from seeking indemnity under the much broader Article 9. Article 9 says all costs and expense, and it lays out three areas that Metro-North is entitled to indemnity for all costs and expense related to certain things. The first two are actual losses sustained, so either to the state's property or to the carrier. The third part that is covered by all costs and expense is, of course, any claims, demands, or actions for such loss, and such loss has to refer back to the two types of loss that are earlier referenced. And then it says directly or indirectly caused by the presence of United Illuminating's wires. Judge Meyer, in denying summary judgment on the third party complaint, said the contractual indemnification claim can go forward because, of course, if Mr. Colon can prove that he was startled by that static electricity from United Illuminating's wires and that set in motion his accident that caused his injuries, then of course there would be no question that Metro-North would be entitled to indemnification under Article 9. Right. No, again, you're trying to change this language to, in essence, insert caused or allegedly caused by the presence or use of the transmission system, right? That's really what you're trying to say. I'm not saying that, Your Honor. Respectfully, the contract says that. It says for any claims, demands, or actions for an actual loss. Right. And the loss, injury, or damage is caused by the presence of the transmission system. And it seems to me that what you're saying is that it really means to say caused or allegedly caused. So, in other words, it could be a groundless or a baseless, even a frivolous case, right? That's what you're saying, but that's not the language of the  And respectfully, Your Honor, I would disagree. I think the provision says exactly that. It says... It says allegedly caused? Well, it says a claim for such loss. A claim is an allegation. It hasn't been proven. The claim wasn't caused by the wires. The injury was caused by the wires. It was a claim for a loss that was caused by the presence of the wires. Caused by the wires, right? Right. So, a claim for loss caused by the presence of the wires. I mean, there are some other cases that we've seen that use the word allegedly to make it explicit. You're saying that that's implicitly there, right? Well, I'm saying it's there because the contract says all costs and expense. And the cases that we relied on in our papers say all costs and expense means, unless specifically excluded, it means costs of defending against a claim, even if that claim is not proven later on. That's the whole point of having an indemnification provision. You certainly knew how to say even if groundless in another provision, right? The parties did know how to do that. They didn't do it here. They did not. But I would submit that they didn't have to because of the breadth of the Why was it necessary to do it in the other section? In the insurance section? The insurance section, it puts the onus on United Illuminati to obtain insurance that's going to cover it for losses that it would be responsible for. So, it's a belts and suspenders method for CDOT and its designees to make sure that if something such as Article 9 comes past I understand why there's a provision for insurance. I'm asking why it was deemed appropriate to in that section but not in the section that talks about indemnification. I can't go back to what the drafters of that contract believed. I can only say that it appears that that language is there because whatever insurance United Illuminati obtains is out of the control of Connecticut Department of Transportation and its designees. It puts the onus on United Illuminati to go out and get that insurance. And so, it's a way for If something comes to pass where we think that you are responsible for the costs and expense of either the claim or the actual loss, we want to make sure that you have sufficient insurance and one way that we're going to make sure that you have sufficient insurance is to make sure that there is no question whatsoever, given the breadth of Article 9, which I think most insurance companies probably are not accustomed to seeing something that says you're going to be responsible for all costs and expense related to any claims, even if indirectly caused by the mere presence of equipment. It usually is tied to some sort of wrongdoing. But that's not the case here. Am I oversimplifying your argument? Is what you're saying that the reason they had to get insurance to cover the cost of defense is that cost of defense is one of the things that they might be liable for under the indemnity provision? And just as you want them to get insurance to make sure they'd be able to pay the liability if liability happened, you're also asking them to get insurance for the cost of defense because the cost of defense is something they'd also have to pay for? Yes. I don't think that's an oversimplification. I think that's how you read Article 9 and Article 3 together. I see that I am over time, and I'm happy to continue on my rebuttal time if that's okay. Your Honors, may it please the Court, my name is James Ringgold. At the with me at counsel table is Attorney Charles Reed, trial counsel below. I practice at the law firm Laughlin Fitzgerald in Wallingford, Connecticut, and we have the privilege of representing the third party defendant, Appelli United Illuminating Company. At the outset, I'd just like to point out, I think Judge Sullivan, I think you hit the nail on the head, that the claim here was not caused by the transmission system, and that's how the Article 3 is structured, is that there must be a loss caused by the U.I. transmission system, directly or indirectly, or there must be a claim for such loss, such doing a lot of work here, caused directly or indirectly by the U.I. transmission system. That's a little bit duplicative, though, right? I mean, why would you need that second clause? The claim section, Your Honor? Yeah. Because if the first section covers you for all loss related to use of the transmission system, then why would you need to say, as well, any and all claims for actions involving loss? Claims, demands, or actions? Claims, demands, or actions. I apologize, Your Honor. The first section deals with, speaking in hypotheticals, if Mr. Colon had been successful before the jury and had won a $5 million verdict, that would be a loss that was suffered directly, that would then, if it was then proven that the clause was triggered, U.I. would owe indemnification for it. The claim language provides for if he were, say, unsuccessful because the jury found that he was 51 percent contributorily negligent. So there was no loss, but there was a claim for loss. And then, if the jury were to answer Jury Interrogatory 8 differently and find that, yes, his injuries were caused by a serious hidden danger, and part of that serious hidden danger was caused by U.I.'s transmission system, but he loses for some other reason, there wouldn't be a loss for U.I. to indemnify, but there would have been a claim for loss with costs associated with that claim for loss. That's what those two . . . So it's not duplicative. No, exactly, Your Honor. That seems like a stretch to me, but I mean, let me ask you about the insurance provision, because why on earth would Metro-North be insisting that you have insurance to cover groundless claims if there was no way that they were going to get reimbursed for those groundless claims, in other words, the cost of defense? They may be reimbursed for them by the insurance, but . . . But, I mean, they've . . . the contract requires you to get insurance that covers those costs, and it seems silly that they'd be insisting that you get insurance that's not going to benefit them in any way. I don't believe that's the claim here, Your Honor. First of all, as a point of clarification, they obviously haven't sued under the insurance section, so that's not directly at issue. I'm not sure why they didn't. They weren't insured, I mean, unless the insurance wasn't procured, I don't know, but it would seem to me that they could sue under that, but it's not clear to me why the parties would enter into an agreement that has this provision that requires your client to get insurance that will cover the cost to investigate and defend against all claims for damages, even if groundless, if you're not . . . if you don't have to indemnify them for that, why would they be insisting on it? Again, I would . . . taking Attorney Fineman's words, I think it is a belt and suspenders approach. The indemnification clause is about the liability of UI to the State or the State's designee. The insurance provision is about the provision of insurance that will cover some costs. They need not provide exactly the same protections because it's two different parties who might pay these costs, and as a point that this works as a useful segue, Your Honor, throughout this briefing, there's been a point of discomfort to me, which is I've felt as though we've been talking past each other a little bit in what our briefs discussed. Attorney Fineman is correct that this is a broadly written clause. No one could dispute that. It says any and all costs and all claims. Of course it's a broadly written clause, but it has a factual trigger in it for those protections to be activated. It doesn't say any claims of any sort anywhere that UI's wires are mentioned by anyone. It says a claim for loss caused by, directly or indirectly, UI's transmission system. That's a factual question as, for example, the McNeff case shows, the Connecticut Appellate Court case, which has the same clause involving a claim for loss, in that case arising out of the work, but it's the same question. There's a factual trigger for the indemnity protection to apply, and the issue is put to the jury very directly on a jury interrogatory that both parties submitted. In fact, I can say, I went back through the record preparing for today, the interrogatory is closer to the version submitted by Metro-North, and the jury said no. Metro-North failed to prove the factual basis for its claim. The sole factual question put to the jury, necessary for this clause to apply, they lost. They made a valiant effort. There was a two-week jury trial, multiple witnesses, lengthy testimony, but they lost. The clause doesn't apply by its very terms. Is there at least an ambiguity about how to read that? If you were describing the claim that Mr. Colon made, the claim he made is, at least in part, a claim that the loss was caused by the UI wires. I would disagree. He had alternatives. He had alternatives that maybe it was their wires that got him shocked in the first place. I disagree, Your Honor, and this is where, again, echoing Attorney Feinman, I wish that the initial argument had gone into the weeds a little bit more about the case. The underlying controlling Connecticut Supreme Court case is called Mufuchi. It's a failure to warn case, I understand. Failure to warn case, yes, but the specific element that's relevant here for us to consider is that the protection guaranteed by Mufuchi is a protection of a failure to warn against a serious hidden condition that the defendant created or maintained. The only defendants that Omar Colon sued were Metro-North and the MTA, which means, by definition, as an absolute matter of law, the only conditions that he could have been claiming caused his injuries were conditions that Metro-North or the MTA created or maintained. And there is no dispute, it is clear throughout the transmission line agreement, that Metro-North and the MTA had nothing to do with the creation or maintaining of UI's transmission system. The whole point of the contract is UI making a deal with the state saying, okay, we'll let you use the top of our towers, but that's your responsibility. You put your stuff up there, you're responsible for installing it, you're responsible for the maintenance costs. If any liability flows from it, then pursuant to the indemnity clause, you may be responsible for it. But that is clearly solely UI's property. So there is no way to take Omar Colon's claim, which can only be about conditions that Metro-North or the MTA created or maintained, and transfer that into a claim about UI's transmission system. It is Metro-North and the MTA that inserted UI into the case. They were free, as they did, to argue an alternative theory of how he was injured. Omar Colon says, well, you failed to warn me of the danger of climbing 40 feet in the air, so I got into the proximity of a static electric field in Permafuci. It's a static electric field that your wires created. And they're free to say, no, no, no, it wasn't our wires that created that electric field, if that's what injured you. UI, it was your wires. And if they could prove that, then they would be due the indemnity protections. But they failed to prove that. So they don't owe, they're not owed those indemnity protections. Just proceeding for a moment through our brief, Your Honor, you begin with the plain language of the contract, and we would submit that the plain language of the contract is clear. It doesn't contain a duty to defend, so it's not analyzed as a duty to defend. But to the extent that there is any confusion or ambiguity, it's Latin, so I like to say it, expressio unius est exclusio alterius, is a canon of contract interpretation that applies pretty clearly here. When these parties, they're experienced commercial parties on the part of UI, or it's literally the state of Connecticut and the C-dot on the opposing side, when they wish to create a duty to defend, when they wish to create an obligation that is analyzed as a duty to defend, they did so expressly in this contract. They're not novices at drafting contracts. They know how to write what they mean so that they say what they mean and mean what they say. They did not create that duty here in the indemnity provision. Can you just explain to me again why the second clause of the Article 9 isn't duplicative? Absolutely. I heard what you said about contributory negligence, and it's not clear to me why that actually explains the second clause. Sure. I use that as an example, Your Honor, but literally any other element. Any other elements, meaning what? Meaning, let's take the jury interrogatories that the jury was faced with for a moment, Your Honor. They were asked to answer five subparts for jury interrogatory one, and then they were asked a series of other interrogatories about whether or not Omar Colon had proven his claim, and then there was a final eighth interrogatory that was addressed as to UI's, the third-party claim against UI. Theoretically, Omar Colon might have been able to prove the second element that his injury was caused by a serious hidden danger. He didn't in this case, but theoretically he could have. That would clearly then be covered by the first section. Cost of loss of life or property. Perhaps my hypothetical isn't clear, Your Honor. I apologize. First of all, he could prove his entire claim, and the jury says, you were horribly injured. Here's $5 million. In answering all of these questions, perhaps the jury would answer yes to jury interrogatory eight. Not only yes, here's a $5 million verdict, but also yes, his injuries were caused directly or indirectly by UI's transmission system. Then under the contract, that would be an injury or damage to the person or property of any third person directly or indirectly caused by the presence or use of the transmission system. That would be the first clause. The presence or use of the transmission system applies to both of those. Yes, absolutely. I'm saying that hypothetical $5 million verdict in this case would be indemnified under the first clause. Alternatively, the jury could say, no, no. Attorney Rush is a smart attorney and has proven the first element and the second element, but he's failed to prove constant intrusion. Say hypothetically, that's what they determined. Yes, he's proven that Metro-North was the possessor of the property and proven that, yes, we believe that Omar Cologne fell at height because he was affected by a static electric field, but no, he's failed to prove constant intrusion, and therefore, his claim fails. Proceeding through the jury interrogatories, they would see the instruction, okay, but even if you've answered no here, proceed to number eight if you answer, and you proceed to number eight, and that's where you are again presented with the question of was his transmission system, and if they were to answer yes there, then theoretically, in that case, even though there would be no loss to indemnify, there would be a claim for loss that had been proven to be caused by UI's transmission system such that the cost associated with that would be due indemnity. So that's one interpretation. I'm not sure it's an obvious one. Another is that this which is sort of one is the liabilities and one is the defense costs. Returning to what I said a little earlier, Your Honor, this is where I feel as though we're talking past each other. UI's position is not and Judge Meyer's decision below is not that this contract can never in any case whatsoever provide for the indemnity of defense costs. The question is whether it can provide . . . I understand that, but I guess my question is if this is an ambiguous contract, then I guess you go back and then you take discovery and you figure out if anybody really was thinking what you said or if there's any evidence, extrinsic evidence, that supports that interpretation perhaps. But you're saying that the plain language supports your theory, right? The plain language, but also the case law, also canons of contractual interpretation, also analogous language from Connecticut statutes. These are all various ways that you arrive at the same point, but yes, we begin at the plain language of the contract. I don't think you mentioned this in your brief, but is your interpretation of the provision aided by that final clause which makes it clear that accepting loss or damage due to the negligence of the state or the state's designee expressly is an odd thing to tack on, it seems to me at least potentially, to a duty to defend clause? Precisely, Your Honor. I suppose that's not in our brief and there's only so many pages and no matter how well you write, there's always something you'll regret. But I would agree, Your Honor, that again, it's not a duty to defend. If there's a question of balancing of the negligence of who's responsible for this accident, that is inherently a factual question that is for a jury to answer and the jury answered it here and the jury rejected that proposition. I know I'm well over, Your Honor, but just returning again to Judge Sullivan, there's distinction between whether this contract can provide for defense costs when it is triggered and whether it has been triggered here. Our argument, Your Honor, is that it requires a factual proof of causation even indirectly, but factual proof . . . No, it's interesting. You'd have the defense cost indemnification privilege so late in the whole case first to figure out whether or not you have a duty to defend it or to cover the defense cost. That's usually you want to nail that down up front, right? It depends on what protection is being bought in the contract, Your Honor. I would point again to the McNeff case which has a similarly worded contract protecting with indemnity but not the word defend against claims that occur in a certain manner in that case arising out of the work and the court in that case said it was a factual question. I get that, but then there's . . . Maybe I'm trying to figure out what your answer to Judge Sullivan could be or should be, but it's not a duty to defend at all. Correct. It's a duty to indemnify for at least in whatever circumstances apply and that's the question here. A duty to indemnify for the defense costs under certain circumstances and we're asking what the circumstances would be. Precisely. So whatever other arguments there are, and I think there are a lot of complicated arguments on both sides, at least the point about it's a problem that you wouldn't know till the end of the case, that would be a problem if it was a duty to defend from day one. Precisely. But it's not so much a problem if the question is just when the case is all over who pays all the costs for the liability and the defense costs and everything else because nobody's contending I don't think. Maybe we'll hear from otherwise Mr. Feynman on rebuttal, but I didn't think anyone was saying that this was a case where at the very beginning Metro and North could have come to you and say, hey, we're like out of here, you hire . . . as they would with an insurance company, you hire the lawyers, you control the defense because this is all your thing now. Because now once this claim has been made, it's up to you to defend us from it. That's not really what's being said here. We would agree, Your Honor, although there are tones of that to Metro and North's brief that it should be analyzed as a duty to defend or indeed that it creates a duty to defend, but we would absolutely agree it does not create a duty to defend. It creates a duty to indemnify losses and claims for losses and the costs associated therewith if the clause is triggered and it wasn't triggered. And suppose Mr. Colon had won his case and the interrogatory was answered to your disadvantage. Clearly, the first part of this section tells us that you would have to pay the liability judgment. Which part says that you would have to pay the costs of the litigation? Is that already built into the loss part? I believe that's what the claims portion speaks to, Your Honor, because read in full, putting in some ellipses, it says, from and against all cost or expense resulting from any and all loss or damage . . . the litigation costs aren't arising out of the fact that Omar Colon had a hospital bill for his burns. The loss or damage that's being indemnified is the hospital bill for his burns, his pain and suffering, etc., etc. Instead, the cost of paying Attorney Feinman and Attorney Hickey to defend the case and to litigate the case would be the cost or expense of the claim for that loss. So isn't that a simpler answer, at least to Judge Livingston's question about redundancy? Because that language isn't redundant because otherwise, even if you guys lost the suit all from the get-go, you wouldn't have to pay Metro-North's lawyers' costs but for that second chunk about the cost from the claims, demands, or actions. Your Honor, that's precisely what I was trying to relate, but unsurprisingly, you were much more eloquent in doing so. No, no, no. I'm just trying to figure out . . . there's still a different question about your answer to Judge Sullivan about where you were going into . . . there are other circumstances where you're apparently conceding there would be liability on you for the defense costs triggered by the second clause, this thing of where one element is found but another element isn't and so on, but that's not . . . but you're saying that's not this case? Correct. That was merely my very inartful, obviously, attempt to craft a hypothetical to explain a situation where one clause would be useful but the other clause wouldn't to show that there is no overlap in redundancy, that they serve different purposes. Can I ask a practical question? It's just sort of puzzling to me that there'd be a contract that requires you to get insurance that covers . . . that the insurance company then has to investigate and defend all claims, even groundless ones, so presumably this one, and yet the insurance company then sort of sits back and lets its two insureds fight it out in federal court over who is indemnifying whom. That would seem to be just an utterly wasteful exercise that just generates more litigation costs. As a practical matter, Your Honor, I'm not in the Metro-North Claims Department nor do I work for Ryan Ryan DeLuca. I don't know why the claim wasn't submitted or made under the insurance provisions. Neither. It would seem to me each side had an interest in having the carrier cover the costs of this litigation from the get-go, I mean the underlying litigation, to investigate and defend it. It seems odd to me that we're debating the indemnification clause when the insurance clause would presumably cover this. All I can say, Your Honor, is we're debating the indemnification clause here because that's the clause that was used for Metro-North's third-party claim. Well, that's true. It may have been inefficient, I guess is what I'm saying. Anyway, let's hear what Mr. Fineman has to say. All I can say to that, Your Honor, is that there were a lot of inefficiencies along the way, the twists and turns that this case took. One of the complicating factors was that for reasons that I don't think anybody will ever understand, the plaintiffs made a lot of intriguing strategic decisions along the way, but one of their decisions was not to sue United Illuminating directly. It doesn't matter. Metro-North isn't insured under the policy, right? Yes. Metro-North could just call the carrier and say, hey, we're getting sued here. It's groundless, we think, but that doesn't absolve you of your duty to investigate and defend us against all of these claims. And then it would seem to me that there's no problem. There's no need for this litigation. I'm not sure that that would have been the case, Your Honor. I don't know how that would have played out. But notwithstanding that potential avenue, Article 9 does provide us with the exact same, a different mechanism to achieve the exact same result. And when we look at Article 3 in the insurance provisions, I think it's important to note that that is further evidence of what the parties intended in terms of the risks that were being allocated throughout the indemnity provisions and throughout the remainder of the contract. And that is something that the cases that we rely upon in our brief do talk about as being a considerable factor for the courts to take into account how the parties, what they were really trying to achieve here. And I don't think there can be any real question that what the parties here were trying to achieve was a shifting of the cost of any risk to United Illuminating, because United Illuminating, for the benefit of being allowed to use, to run its very high voltage wires along railroad and state property. And so in exchange for that, United Illuminating was saying, on the very off chance, I mean, I don't think anybody ever would have foreseen that somebody, number one, climbs the catenary as high as Mr. Colon did, and number two, if they did and they sustained the injuries that he did, that they would sue anybody. On the very off chance that that comes to pass, we will accept the risk that we are The plaintiffs chose to focus their claims of negligence on Metro-North and the MTA. But that doesn't mean, and you can never talk about this case realistically or reasonably in such a way where the plaintiffs were talking about this case without United Illuminating's wires being a factor at all. United Illuminating's wires, according to the plaintiffs, at all times, up until the point of trial, until we get the jury interrogatories back, nobody knows how the jury is going to perceive this, their claims at all times were, your electricity from your wires put this whole thing in motion. Metro-North's negligence, according to the plaintiffs, you didn't warn me enough from climbing that tower, or you didn't warn me enough, or you should have somehow physically barricaded me from doing that. But allowing me to get up to UI's wires is what the plaintiffs claimed Metro-North was negligent in doing. United Illuminating can't be written out of this case, no matter how hard they try. The interrogatories, the outcome of the interrogatories would matter if, for instance, Mr. Colon had won his case and for some reason the jury said, we believe his theory of the case, but we're not totally convinced that United Illuminating's wires is what set it all in motion. All we know is that he was severely injured when he falls onto Metro-North's wires, and so we're not going to find that United Illuminating's wires were directly or indirectly involved in the incident. At that point, United Illuminating would not have the duty to indemnify Metro-North for the losses that would have been assessed in Mr. Colon's favor, and that's the second clause of that, of Article 9. So you say the first clause wouldn't be implicated there, but under your theory, that's when the second clause kicks in. Correct. Correct. And I see my time is up. I'm happy to answer any additional questions or else I'll rest on my papers. Thank you. Thank you both for your argument. Very nicely done on both sides.